## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RICHARD A. OLIVO, et al.,**<br><br>    **Plaintiffs,**<br><br>    **v.**<br><br>**BARBARA ELKY, et al.,**<br><br>    **Defendants.** | **Civil Action 09-00298  (HHK)** |

## MEMORANDUM OPINION

Plaintiffs Richard Olivo, John Hawkins, and Norman Boone are current and former employees of the National Museum of Women in the Arts ("Museum").  They bring this action against the Museum, the Museum's Defined Contribution Plan ("Plan"), and Plan administrator Barbara Elky, alleging violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1500 (2006), and asserting a common law negligence claim.

Before the Court is defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [#10].  Upon consideration of the motion, the opposition thereto, and the record of this case, the Court concludes that the motion must be granted.

## I.  BACKGROUND

ERISA regulates employee benefit plans, "requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto," "establishing standards of conduct, responsibility, and obligation to fiduciaries of employee benefit plans," and "providing for appropriate remedies, sanctions and ready access to the Federal Courts."  29 U.S.C. § 1001.

In 1991, the Museum established the Plan, a defined contribution pension plan under

ERISA.[1]  Pursuant to the Plan, eligible employees contribute a percentage of their earnings to the

Plan as tax-deferred retirement savings and the Museum makes a matching contribution.  A part-

time employee is eligible to enroll in the Plan only if he or she is:

> credited with 1,000 hours or more of service (including paid absence) during any
> 12-consecutive calendar month period commencing with his or her Date of
> Employment or any anniversary date, in which event he or she becomes an
> Eligible Employee as of the beginning of the 12-month period during which he or
> she was credited with at least 1,000 hours of service.

Compl. Ex. A, Art XI.  The Plan provides, in pertinent part, that "[the Museum] will notify an

Eligible Employee when he or she has completed the requirements necessary to become a

Participant."  *Id*. Art. II ¶ 2.2; Art. XI.

Olivo, Hawkins, and Boone allege that they became eligible to enroll in the Plan in 1994,

1999, and 2000, respectively, but that defendants failed to notify them of their eligibility until

Elky notified them in February 2006.  Plaintiffs all enrolled in the Plan after they were notified

that they were eligible to do so.  According to plaintiffs, in February 2006, Olivo asked Elky to

investigate why he and the other employees had not been timely notified of their eligibility to

enroll in the Plan and Elky agreed to do so.  Subsequently, in May 2006, Olivo sent a

memorandum to Judy Larson, the director of the Museum, inquiring about the investigation.

Larson responded that Elky would address Olivo's concerns and that the Museum was seeking a

---

[1]  A defined contribution pension plan is "a pension plan which provides for an individual
account for each participant and for benefits based solely upon the amount contributed to the
participant's account . . . ." 29 U.S.C § 1002.  In a defined contribution plan, typically "the
employer contributes a percentage of payroll or profits to individual employee accounts.  Upon
retirement, the employee is entitled to the funds in his account." *C.I.R. v. Keystone Consol.
Indus., Inc.*, 508 U.S. 152, 154 (1993).

fair resolution.  Plaintiffs assert that Elky neither responded to their concerns nor attempted to

remedy the problem.  Plaintiffs allege that they have suffered economic injury due to defendants'

untimely failure to notify them of their eligibility to enroll in the Plan.

## II.  ANALYSIS

Plaintiffs bring four claims.  First, they allege that defendants owe them benefits due

under the Plan for the years in which they were eligible, but were not informed that they could

enroll pursuant to ERISA subsection 502(a)(1)(B).  Second, they allege that defendants were

negligent when they did not inform plaintiffs of their eligibility to enroll in the Plan.  Third, they

allege that defendants committed a fiduciary breach pursuant to ERISA subsections 502(a)(2)

and (3) when they did not inform plaintiffs of their eligibility to enroll in the Plan.  Fourth, they

claim civil penalties pursuant to ERISA subsection 502(c)(1)(B) for defendants' alleged failure to

comply with their request for information.  Defendants move to dismiss all four claims under

Rule 12(b)(6).  The Court will address defendants' motion to dismiss with respect to each of

plaintiffs' claims in turn.

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead factual allegations

sufficient to raise the right to relief beyond the speculative level when the court assumes all

allegations in the complaint to be true.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A

defendant may raise an affirmative defense in a 12(b)(6) motion where the "facts that give rise to

the defense are clear from the face of the complaint."  *Walker v. Pharm. Research & Mfrs. of

Am.*, 569 F. Supp. 2d 209, 216 (D.D.C. 2008) (holding that the court may dismiss a claim on

statute of limitations grounds where "no reasonable person could disagree on the date on which

the cause of action accrued") (internal citations omitted); *see also Stewart v. Nat'l Educ. Ass'n*,

471 F.3d 169, 173 (D.C. Cir. 2006) (affirming the trial court's dismissal of state law claims

based on a showing of ERISA preemption).

A.     **Plaintiffs May Not Recover Benefits Due Under the Plan Pursuant to ERISA
       Subsection 502(a)(1)(B) Because They Did Not Accrue Benefits Under the Plan.**

Plaintiffs contend that they may recover the benefits they should have earned under the

Plan under ERISA Subsection 501(a)(1)(B).  Defendants argue that plaintiffs' claim under

subsection 502(a)(1)(B) for benefits owed under the Plan must be dismissed because plaintiffs

seek benefits *they would have earned* had defendants notified them of their eligibility to enroll in

the Plan as opposed to benefits *earned* under the Plan.  Plaintiffs do not respond to this argument.

Subsection 502(a)(1)(B) provides that "[a] civil action may be brought – (1) by a

participant or beneficiary – (B) to recover benefits due to him under the terms of his plan, to

enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the

terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  This subsection allows a plan participant to

assert her contractual rights under a benefit plan.  *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129,

1133 (7th Cir. 1992).  Recovery under subsection 502(a)(1)(B) is limited to benefits already

accrued under a benefit plan.  *See Eichorn v. AT&T Corp.*, 484 F.3d 644, 652 (3d Cir. 2007)

(holding that plaintiffs may not bring a claim under subsection 502(a)(1)(B) for benefits they

*would have earned* if not for defendants' interference); *Tolle*, 977 F.2d at 1134 (7th Cir. 1992)

("In order to enforce the terms of a plan under Section 502, the participant must first qualify for

the benefits provided in that plan.").  Where the plaintiff "seeks past-due contributions never

made to his account, and not accrued benefits, that is, the balance of his account . . . he cannot

maintain a suit under section 502(a)(1)(B)."  *Yoon v. Fordham Univ. Fac. & Admin. Ret. Plan*,

2004 WL 3019500, at *14 (S.D.N.Y Dec. 29, 2004).

Plaintiffs' 502(a)(1)(B) claim must be dismissed because plaintiffs do not seek benefits due to them under the terms of the Plan.  Under the terms of the Plan, employees must enroll in the Plan and contribute a portion of their income to the Plan in order to accrue benefits under the Plan.  *See* Compl. Ex. A, Art. II  ¶¶ 2.3, 3.1.  Here, plaintiffs did not enroll in or make contributions to the Plan prior to February 2006.  Plaintiffs argue that they were unable to enroll in the Plan and accrue benefits under the Plan because defendants failed to notify them of their eligibility.  This claim is not properly brought under subsection 502(a)(1)(B), however, because it does not assert a contractual claim for accrued benefits.  Instead, it asserts an equitable claim for past-due contributions based on a breach of a fiduciary duty properly brought under a different section of ERISA, a claim that will be discussed later in this memorandum opinion.  Therefore, the Court grants defendants' motion to dismiss plaintiffs' claim for benefits due under the Plan pursuant to subsection 502(a)(1)(B).

## B.    ERISA Preempts Plaintiffs' Common Law Negligence Claim.

Plaintiffs bring a common law negligence claim against the Museum and Elky, alleging that these defendants acted negligently when they failed to notify plaintiffs of their Plan eligibility, causing plaintiffs' economic loss.  The Museum and Elky rejoin that plaintiffs' common law negligence claim must be dismissed because ERISA preempts common law claims that relate to an employee benefit plan and because plaintiffs rely on a duty that does not exist at common law.  Plaintiffs respond that their negligence claim is not preempted because it falls within an area of traditional state authority and because the parties are not principal ERISA entities.

ERISA contains a broad preemption clause, which states that ERISA's provisions "shall supersede any and all State laws insofar as they . . . relate to any employee benefit plan . . . ."  29 U.S.C. § 1144(a);  *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 732 (1985).  Preemption extends to common law causes of action that relate to an employee benefit plan.  *Coleman v. Pension Benefit Guar. Corp.*, 196 F.R.D. 193, 197 (D.D.C. 2000).  Where a plaintiff relies on a benefit plan to establish a duty on the part of the defendant, ERISA preempts her common law claim because the claim relates to a benefit plan within the meaning of ERISA.  *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004) (holding that a claim falls within ERISA's scope where the plaintiff is only entitled to the benefit in question under the terms of a benefit plan); *Coleman*, 196 F.R.D. at 197 (holding that a claim must be dismissed where it relies on the existence of a benefit plan).  Further, a plaintiff's common law claim is preempted where she advances it "as an alternative basis for recovering [benefits] under the . . . Plan."  *Id*.

The Court concludes that plaintiffs' common law negligence claim must be dismissed because it relates to the Plan, an employee benefit plan under ERISA.  In pleading their common law negligence claim, plaintiffs assert that Elky and the Museum "negligently failed to notify plaintiffs of their Plan eligibility," Compl. ¶ 51, that plaintiffs "[have] been denied benefits and suffered substantial economic loss by not being able to make deferral contributions to the Plan or receive matching employer contributions," Compl. ¶ 53, and that plaintiffs "seek to recover damages from [the Museum] for the benefits that each Plaintiff lost by being improperly excluded from the [Plan]," Compl. ¶ 54.  These statements demonstrate that plaintiffs' claims "relate to [the] employee benefit plan," *see* 29 U.S.C. § 1144(a), because the duty that plaintiffs allege has been breached – the duty to notify – exists because of the Plan, *see Davila*, 542 U.S. at

6

210; *Coleman*, 196 F.R.D. at 197.

Plaintiffs' argument that their negligence claim survives ERISA preemption because employer-employee relations are a traditional area of state authority and because the parties are not principal ERISA entities is unavailing.  Plaintiffs cite *Johnson v. Antioch Univ.*, 1992 WL 88028 (D.D.C. April 15, 1992) for this proposition.  In *Johnson*, the plaintiff had been assured by her employer that she would remain covered under its new long-term disability plan and retired in reliance on that statement.  *Id*. at *1.  Subsequently, the employer informed her that due to her pre-existing condition, she would not be covered.  *Id*. at *2.  The Court concluded that ERISA did not preempt the plaintiff's gross negligence claim because it involved an exercise of traditional state authority and was not between principal ERISA entities because the employer and insurance carrier, not the Plan, were the wrong-doers and plaintiff was never a beneficiary. *Id*. at *3-5.  The Court recognized a distinction between "wrongdoing by the Plan personnel or its contractors in the course of the administration of the Plan," which would be preempted, and "wrongdoing in the nature of fraud in the inducement committed, not by the Plan but, by third parties such as the employer and the insurance carrier," which would not be preempted.  *Id*. at *6.

Here, by contrast, the wrongdoing alleged is by Plan personnel in the course of the administration of the Plan.  Further, this Court has declined to follow the *Johnson* test in recent cases involving ERISA.  *See, e.g.*, *Krooth & Altman v. N. Am. Life Assurance Co.*, 134 F. Supp. 2d 96, 101-02 (D.D.C. 2001) (declining to follow Johnson in light of "the broad construction of [ERISA's] preemption provisions").  The Court grants defendants' motion to dismiss plaintiffs' common law negligence claim.

**C.     Plaintiffs' Breach of Fiduciary Duty Claim is Barred by ERISA's Statute of Repose.**

Plaintiffs claim that defendants breached a fiduciary duty owed them under ERISA when defendants did not inform them of their eligibility to enroll in the Plan.  Defendants acknowledge that plaintiffs may have had a viable claim for breach of fiduciary duty under ERISA, but argue that this claim must be dismissed because it is precluded by ERISA's six-year statute of repose.

Under ERISA, a plan fiduciary is required to exercise a "[p]rudent man standard of care," 29 U.S.C. § 1104(a), and may be held personally liable for losses caused by breach of that standard of care, 29 U.S.C. § 11099(a).[2]  An ERISA claim arising from a fiduciary breach is time barred after the *earlier of*:

> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation . . . .

29 U.S.C. § 1113.[3]  In the case of an omission, a party's failure to notify can serve as the breach or violation of the statute.  *Thompson v. Cont'l Cas. Co.*, 602 F. Supp. 2d 943, 946 (N.D. Ill. 2009).

Defendants contend that plaintiffs' claims accrued on the day that defendants were required to notify plaintiffs of their eligibility and failed to do so, sometime in 1994 for plaintiff

---

[2]  ERISA provides that "a person is a fiduciary with respect to a plan to the extent [] he exercises any discretionary authority or discretionary control respecting management of such plan . . . [or] has any discretionary authority or discretionary responsibility in the administration of such plan."  29 U.S.C. § 1002(21)(A).

[3]  ERISA contains an extended statute of limitations in cases of fraud or concealment.  29 U.S.C. § 1113.  In such cases, an "action may be commenced not later than six years after the date of discovery of such breach or violation."  *Id.*  Here, plaintiffs have not alleged fraud or concealment on the part of defendants.

Olivo, 1999 for plaintiff Hawkins, and 2000 for plaintiff Boone, and expired six years after the

date of accrual and well before plaintiffs filed their complaint.  Plaintiffs make two arguments

that their claim of fiduciary breach is not time barred.  First, they argue that the last action

constituting a part of defendants' breach did not occur until February 2006 when Olivo asked

Elky why they had not been notified.  Second, they argue that if the violation is one of omission,

the statute of repose did not begin to run until the latest date on which the fiduciary could have

cured the breach, which, according to plaintiffs, is May 16, 2006, the day before plaintiffs sent a

letter to Larson inquiring into Elky's investigation.  Defendants argue that plaintiffs' theories

would impose unlimited liability on defendants and contradict both the Plan, which requires

notification only when employees become eligible to enroll in the Plan, and the statute, which

imposes a six-year statute of repose.

       In this case, plaintiffs allege that defendants breached their fiduciary duty by failing to

notify them of their eligibility to enroll in the Plan, and so defendants' alleged breach constitutes

an omission within the meaning of the statute.  *See Thompson*, 602 F. Supp. 2d at 946.  Plaintiffs

argue that the statute of repose did not being to run until May 2006, when plaintiffs asked

defendants to look into why they were not notified of their eligibility to participate in the Plan

and defendants failed to take action to cure their breach.  But plaintiffs misconstrue the meaning

of "cure" as used in ERISA.  The Seventh Circuit has warned against readings of 29 U.S.C. §

1113(1)(B) which confuse two alternate meanings of the term "cure" – "cure" in the sense of "to

fix" and "cure" in the sense of "to find a remedy."  *Librizzi v. Children's Mem'l Med. Ctr.*, 134

F.3d 1302, 1307 (7th Cir. 1998).  The court noted that the second reading of "cure" would extend

a fiduciary's liability indefinitely because it is always possible to remedy a breach.  *Id.*  Similarly,

9

in *Aull v. Cavalcade Pension Plan*, the court rejected the plaintiff's argument that the defendant could still cure the breach and so the statute of limitations had not yet started running, stating that the argument "assumes a potentially unending liability on the part of [defendants] that are alleged to have never cured a breach." 988 F. Supp. 1360, 1364 (D. Colo. 1997).

Plaintiffs' argument misconstrues the meaning of "cure" as used in the statute. In May 2006, and arguably today, defendants could "cure" their breach in the sense that they could provide a remedy. They could not, however, "cure" their breach in the sense that they could not fix the breach because plaintiffs have already suffered the alleged injury. Defendants allegedly failed to notify plaintiffs of their eligibility to enroll in the plan in 1994, 1999, and 2000, so each plaintiff first suffered the injury complained of, an inability to make income contributions and receive matching employer contributions, in the year he should have been notified of his eligibility. Therefore, plaintiffs' causes of action accrued in 1994, 1999, and 2000, when defendants could no longer cure, or fix, their breach.

Plaintiffs' alternative argument, that the date of the last action which constituted a part of the breach or violation did not occur until February 2006, when they were informed of their eligibility to enroll, also fails. Here, plaintiffs suggest a continuing violation – that each year defendants were required to notify them of their eligibility, and that defendants' failure to do so constituted a part of the breach. Defendants rejoin that continuing violations are not recognized under ERISA. The Court concludes that a continuing violation should not be recognized where, as here, there was no clear affirmative duty that was breached multiple times, but instead only continuing effects of an initial breach. *See Larson v. Northrup* Corp., 21 F.3d 1164, 1171-72 (D.C. Cir. 1994); *see also Felter v. Kempthorne*, 473 F.3d 1255, 1256 (D.C. Cir. 2007).

ERISA's statute of repose began to run at the time plaintiffs first became eligible to enroll in the Plan and expired six years later, in 2000, 2005, and 2006, well before plaintiffs filed their claim in 2009.  Accordingly, the Court grants defendants' motion to dismiss with respect to plaintiffs' fiduciary breach claim.

**D.      Plaintiffs Do Not Pursue Their ERISA Section 502(c) Claim.**

Defendants argue that plaintiffs' claim under section 502(c) must be dismissed because the information sought by plaintiffs pursuant to this claim does not fall with the scope of defendants' obligation under ERISA.  Plaintiffs do not contest defendants' motion to dismiss as it relates to this claim.  Pls.' Opp'n to Defs.' Mot. to Dismiss at 1 n.1.  Therefore, the Court grants the motion to dismiss with respect to plaintiffs' fourth claim.

### III.  CONCLUSION

For the foregoing reasons, the Court concludes that the motion to dismiss must be granted.  An appropriate order accompanies this memorandum opinion.

Henry H. Kennedy, Jr.
United States District Judge

11